# THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

## vs.

## WILLIAM J. TICKNER ET AL.

*Municipal Corporations—Charges for Water—Cutting Off Water Supply—Waiver of Right.*

The power and authority to cut off the water supply of a consumer who has failed to pay the water rent charged against him does not deprive the city authorities of other remedies for the collection of such charges, but is merely an additional means to that end, which may be availed of or waived.    p. 153

When the city authorities, without having taken any measures to collect certain unpaid charges for water, and without having made any disposition of such charges, entered into a new contract with the consumers so in arrears by adopting a different method of charging for water, and accepted from such consumers payment of the charges subsequently accruing, based on this method, they thereby waived the right to cut off the water supply because of the non-payment of the charges previously accrued under the former method.    pp. 151-154

*Decided May 3rd, 1922.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

Bill by William J. Tickner and others against the Mayor and City Council of Baltimore and others, for an injunction against the cutting off of the city water supply from plaintiffs' premises. From a decree for plaintiffs, defendants appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Allen A. Davis, Deputy City Solicitor,* with whom was *Roland R. Marchant, City Solicitor,* on the brief, for the appellants.

*Arthur B. Connelly,* with whom was *Edwin T. Dickerson* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appellees, who are the owners and proprietors of certain garages in the City of Baltimore, users and takers of water from the city's water supply, are in arrears for water rent for one, two, or all of the years of 1918, 1919 and 1920.

Prior to January 1st, 1918, they were charged for water consumed in their garages on a meter or front foot basis. In January, 1917, the Water Board adopted a resolution, which went into effect January 1, 1918, changing the method of charging for water consumed in the garages of the City of Baltimore from the meter or front foot to what is known as the square foot basis, charging $1.50 per annum for each one hundred square feet of actual garage area.

The change of method from the meter or front foot to the square foot basis greatly increased the amount to be paid by the appellees, and upon the receipt by them in 1918 of the bills for the rents of that year, they complained of the additional charges imposed upon them, claiming that the same were not only excessive and exhorbitant, but discriminating, and protested against their payment, and with one or two exceptions they refused to pay the bills as rendered. No reduction or adjustment was made in the charges, and the appellees were never required to pay them, nor was the water shut off because of their refusal to do so.

The bills for the succeeding years of 1919 and 1920, for like charges, were also presented to the appellees for payment, but they refused to pay them, and these bills were still unpaid at the time of the change in the city administration in 1920.

There were no further changes made in the method of fixing the charges for water supplied to the garages until the summer of 1920, after the installation of the new administration, when a resolution was passed by the Water Board restoring the meter charges to all garages having two thousand or more square feet of car storage space. At that time, however, no adjustment was made of the charges for the years 1918, 1919, and 1920, nor were they then required to be paid by appellees, nor was the water turned off upon their refusal and failure to pay such charges.

It was not until March 7th, 1921, that any action was taken on the bills of 1918, 1919, and 1920 by the Water Board, when it passed a resolution requiring the appellees to pay the charges for those years as fixed by the square foot basis, and resolving therein that, if such charges were not paid, the water would be turned off.

It was upon the passage of the above resolution that the appellees filed their bill, on which a preliminary injunction was granted, which, upon the further order of the court, was thereafter made permanent, restraining and enjoining the appellants "against turning off the water now being used" by them. It is from the order granting the permanent injunction that the appeal is taken.

Any owner of property wishing to have the same supplied with the water of the City is required to make application to the Water Board, in which he agrees to pay the board "for making the connection and all charges for the use of the water on the premises named as regulated by law," with the proviso that "if the said owner shall violate or cause to be violated any of the laws or rules of the Water Board of Baltimore, the Water Board reserves the right to shut off the supply to the said premises until the said owner has complied with those laws or rules."

The power and authority of the Water Board to establish rates either by meter, fixed charges, or otherwise, for the supply and use of the City's water, which is derived from state

legislation and city ordinances, does not seem to be questioned; but the contention is made by the appellees that the City, having suffered the bills of 1918, 1919 and 1920 to remain unpaid, and having changed its basis of charge. cannot now turn off the appellees' supply of water, when not in default in the payment of the rent accruing from the existing contract based upon the meter charge. In this contention we agree with the appellees.

In *Wood v. Auburn*, 87 Maine, 287, the appellant had been for some time the owner of dwelling houses in Auburn, connected with the system of water works, formerly owned by the Auburn Aqueduct Company but, at the time of the suit, owned by the City of Auburn. For some time the aqueduct company had supplied water to these houses, and he had regularly paid in advance the semi-annual charges therefor; but when November 1st, 1892, came, the appellant did not pay the charges for the ensuing six months, stating as a reason therefor that the water had not been sufficiently supplied and that in other respects the company was not fulfilling its duty to it. The water was not shut off, but was allowed to run into the appellant's houses during the period ending May 1st, 1893. In May, 1893, the aqueduct company transferred its water system and all its bills against its consumers to the City of Auburn. Immediately thereafter the appellant tendered to the proper officials of the City the regular charges for the ensuing six months ending November 1st, 1893, which was accepted by them. In November, 1893, Wood tendered the rent for the next six months. This time the City refused to accept the money and notified Mr. Wood that the water would be shut off from his property unless he also paid the water bills incurred with the old company for the six months immediately preceding May 1st, 1893, which had not been paid and which had been assigned to the City. An effort was made by the parties to amicably adjust the matter between them, but they failed therein, and proceedings were instituted.

In that case the court said: "The complainant concedes that the rules of the old aqueduct company, and of the present

city water board, are reasonable, so far as they require him to pay six months in advance. He contends, however, that when the city has taken his money for one six months, paid according to its rules, it has waived any right to use the summary remedy of shutting off water to collect a disputed bill for any prior six months—that the city has thereby elected to continue him as a water taker, and resort to the usual legal remedies for settling the prior dispute—that any rule of the water board of Auburn which assumes the power to receive the water taker's money from six months to six months, and then at any time deprive him of water because of an old and disputed bill, is unreasonable and therefore void. We think this contention must be sustained." .

"The only trouble is over an old and disputed bill. The aqueduct company could have insisted on payment of this bill in advance, but did not. It could have shut off the water during the time covered by the bill, but did not. It preferred to let the bill and the dispute stand. Its successors, the city, with presumed knowledge of all the facts, did not shut off the water. It accepted Mr. Wood's money for the next install-ment; furnished water for that six months to him as one within his rights and its rules; allowed him to suppose that the old bill in dispute would be ignored, or would be adjusted as are disputes between other parties. After having resumed these relations with Mr. Wood and taken his money therefor, the city now insists that he shall now be summarily deprived of an instant and constant necessity in order to coerce him into a surrender of his position of defense against the old bill. Assuming that the rules of the old company and of the city contemplate this course, we think they are to that extent unreasonable, and therefore without legal force."

In *Poole* v. *Paris Mountain Water Co.*, 81 S. C. 447, the court said: "While a public service water company has the right to cut off a consumer's water supply for non-payment of recent and just bills for water rents, and may refuse to engage to furnish further supply until said bills are paid, the

right cannot be exercised so as to coerce the consumer into paying a bill which is unjust or which 'the consumer in good faith and with show of reason disputes, by denying him such a prime necessity of life as water, when he offers to comply with the reasonable rules of the company as to such supply for the current term." *State ex rel. Gwyn* v. *Citizens Tel. Co.,* 61 S. C. 98; *McEntee* v. *Kingston Water Co.* (N. Y.) 58 N. E. 785; *Weed* v. *City of Auburn* (Me.), 29 L. R. A. 376.

The power and authority of the Water Board to cut off the supply of water from the property of the consumer when he has failed to pay within the time allowed him the water rent charged against him does not deprive the board of the remedies it otherwise has to enforce the collection of said charges, but it is only an additional means to that end, and one that may be availed of or waived by it.

The appellees, when informed of the changed basis for the establishment of the water rents which, as they claim, caused them to pay five to twelve times more than they had been paying under the previous rates, very promptly complained to the Water Board, and protested against the payment of such increased charges, but they were unable to induce the board, by persistent entreaties during a period of more than three years, to reduce them, and the charges remained the same, though the appellees were not required to pay them or to suffer the loss of having the water shut off from their premises.

The city administration existing at the time of the change in the rates continued in power for several years after the first bills for the years 1918, 1919, and 1920 were presented to the appellees and their refusal to pay the same. The following administration, though likewise repeatedly appealed to by the appellees to adjust or reduce the charges, did nothing until the summer of 1920, several months after its induction into power, when it restored the meter rate basis, and, in doing so, entered into a new contract with the ap-

pellees for the supply of water thereafter to be furnished them. It, however, at the time, made no disposition whatever of the charges imposed for the years 1918, 1919, and 1920, but allowed them to remain in the same uncertain state without collecting them or availing itself, at the time, of the power of shutting off the water from the premises of the appellees, or reserving to it the right to do so in the event of the continued failure of the appellees to pay such rent charges.

The right of the Water Board to avail itself of the power to cut off the supply of water because of the non-payment of the charges mentioned, was in our opinion waived by them, upon the execution of the new contract and the receipt by it of the charges created thereby regularly paid to it by the appellees, and consequently the board was without authority to shut off the water from the premises of the appellees at the time it attempted to do so, nearly a year thereafter, and they were therefore confined in the collection of the charges in the three above mentioned years to such other remedies as they had under the law.

As we find no error in the court's action in granting the injunction, the decree appealed from will be affirmed.

*Decree affirmed, with costs.*